BANACH and wife, Appellants, v. CITY OF MILWAUKEE, Respondent.

*May 13—June 7, 1966.*

322

324

For the appellants there were briefs and oral argument by *Burton A. Strnad* of Milwaukee.

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Ewald L. Moerke, Jr.,* and *Harvey G. Odenbrett,* assistant city attorneys, and oral argument by *Mr. Moerke.*

CURRIE, C. J.   The principal issue raised by plaintiffs' appeal is whether the record before the trial court on the motion for summary judgment raised a material issue of fact which required a trial to resolve.  The city's cross appeal presents the issues of: (1) Whether the trial court had the power to stay further proceedings by the city pending plaintiffs' appeal, and (2), if the court did possess such power, did its exercise of the same constitute an abuse of discretion?

*Propriety of Granting Summary Judgment.*

In order to decide the issue of whether the record on the motion for summary judgment presented a material issue of fact which could only be resolved by trial, it is necessary to consider the scope of judicial review of a determination of necessity for taking land by eminent domain when made by a subdivision or instrumentality of the state pursuant to statutory authorization.

Prior to the amendment of sec. 2, art. XI, Wisconsin constitution, in 1961, no municipal corporation was authorized to acquire property by eminent domain without the necessity of the taking having been first established by the verdict of a jury.  This 1961 amendment eliminated the requirement that the necessity of the taking by a municipal corporation be established by the verdict of a jury, and authorizes the legislature to prescribe the manner in which the taking shall be established.[1]  The legis-

---

[1] Sec. 2, art. XI, now provides: "No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established in the manner prescribed by the legislature."

lature, after the adoption of this constitutional amendment, promptly enacted ch. 202, Laws of 1961, which amended the Kline Law (ch. 275, Laws of 1931, as amended). As a result of this 1961 amendment the Kline Law now provides that the common council adopt a preliminary resolution determining necessity and requiring the board of assessment to prepare a plan and report, and that when this plan and report are submitted the common council must hold a hearing on the adoption of the plan, upon due notice to all persons who are affected by assessments or damages. Sec. 5 (3) of the Kline Law now further provides that the adoption by the common council of the report either in its original form or in a revised form, "shall constitute a declaration of the common council that the improvement is necessary, *and that the taking or using of the property mentioned therein is necessary.*" [2] (Italics supplied.)

Thus the action of the common council in enacting its resolution of April 20, 1965, whereby the report of the board of assessment was approved, constituted a declaration that the taking of the 60-foot strip across plaintiffs' lands for the extension of South Eighteenth street *was necessary.* Plaintiffs take the position that the determination of the necessity for the taking of part of their land for street purposes made by the common council of defendant city was arbitrary and capricious because the actual motive underlying such action was not to open up South Eighteenth street for public travel, but rather as a means of laying water and sewer pipes and assessing the cost thereof against plaintiffs as abutting landowners. Dr. Banach, in his affidavit filed in opposition to the city's motion for summary judgment, averred:

---

[2] For a description of the prior Kline Law procedure in which the establishment of the necessity of the taking was by jury verdict, see *Milwaukee v. Utech* (1955), 269 Wis. 132, 68 N. W. (2d) 719.

"That aldermen and various officials of the City of Milwaukee have stated that the real purpose in opening the road across affiant's lands is so that the City may obtain revenues from the construction of the sewer and water [mains]."

Plaintiffs also contend it was error for the trial court to have denied their motion to compel the five subpoenaed aldermen to answer certain certified questions put by plaintiffs' counsel in conducting the adverse examination of these aldermen. It is urged that plaintiffs had the right to inquire into the motives of these aldermen in recommending to the common council the report containing the plan for extending South Eighteenth street and the taking of a portion of plaintiffs' land for such purpose.

Plaintiffs are in error contending that the motives of the members of the common council are material to a judicial review of the validity of the council's determination of the necessity for the taking of their land. Such determination of the necessity of taking is legislative in character.[3] Therefore, the motives which prompt a legislative body, such as a city council, in performing such a legislative function are not within the field of judicial scrutiny.[4]

While determination of necessity of taking made by the body authorized by the legislature to make it is not

[3] 2 Lewis, Eminent Domain (3d ed.), p. 1056, sec. 597; 1 Nichols, Eminent Domain (3d ed.), p. 540, sec. 4.11; 11 McQuillin, Mun. Corp. (3d ed.), p. 321, sec. 32.25.

[4] For cases holding that the motives of a common council or other municipal body performing a legislative function may not be inquired into on judicial review, see *S. D. Realty Co. v. Sewerage Comm.* (1961), 15 Wis. (2d) 15, 30, 112 N. W. (2d) 177; *Jackson v. Madison* (1961), 12 Wis. (2d) 359, 364, 107 N. W. (2d) 164; *Wagner v. Milwaukee* (1923), 180 Wis. 640, 645, 192 N. W. 994, appeal dismissed, 266 U. S. 585, 45 Sup. Ct. 124, 69 L. Ed. 454; and *Tilly v. Mitchell & Lewis Co.* (1904), 121 Wis. 1, 10–12, 98 N. W. 969. To the same effect: 11 McQuillin, Mun. Corp. (3d ed.), 321, 322, sec. 32.25.

beyond the pale of judicial review, such review operates within very narrow limits. In *Swenson v. Milwaukee County* [5] this court quoted with approval a statement from American Jurisprudence [6] that courts normally will not disturb such a determination in the absence of fraud, bad faith, or gross abuse of discretion. [7] This court has held that the determination made of the necessity of taking is beyond question if there is any reasonable ground to support it. [8]

South Eighteenth street is already open and paved north of West Edgerton avenue. By extending this street southward to West Clayton Crest avenue access will be afforded to lands on both sides of this extended street which could be used for home building sites. The fact that plaintiffs may have no present intention of subdividing their lands into lots and selling them is wholly beside the point. We find that a reasonable basis exists for the common council's determination of necessity of taking. Furthermore, in order for a court to find that the taking of land for the purpose of extending an existing street would serve no purpose, the undisputed evidence would have to establish that the opening of the street would serve no useful purpose either presently or in the reasonably foreseeable future. The proof by way of affidavits adduced here falls far short of this.

[5] (1954), 266 Wis. 129, 132, 63 N. W. (2d) 103.

[6] 18 Am. Jur., Eminent Domain, p. 735, sec. 108.

[7] To the same effect see *Jefferson v. Eiffler* (1962), 16 Wis. (2d) 123, 132, 113 N. W. (2d) 834; *Branch v. Oconto County* (1961), 13 Wis. (2d) 595, 599, 109 N. W. (2d) 105; and *Klump v. Cybulski* (1957), 274 Wis. 604, 612, 81 N. W. (2d) 42. One federal court of appeals has noted that the judicial review of an administrative determination of necessity, based on the qualification of bad faith, or arbitrariness and capriciousness, is warranted primarily by dictum, *United States v. Willis* (8th Cir. 1954), 211 Fed. (2d) 1; *United States v. Mischke* (8th Cir. 1961), 285 Fed. (2d) 628, 631.

[8] *Branch v. Oconto County, supra,* footnote 7; *Klump v. Cybulski, supra,* footnote 7.

*Trial Court's Order Staying Further Action*
*by City Pending Appeal.*

The city by its appeal questions the power of the circuit court to stay all action by the city in proceeding with the construction of the street and installation of water and sewer mains pending plaintiffs' appeal to this court. There is no statute which specifically authorizes such a stay order in a case of this kind. The city's brief makes mention of sec. 274.25, Stats., but that clearly has no application.

The first objection raised by the city is that proceedings to lay water and sewer mains would be handled under sec. 66.60, Stats., and that the instant Kline Law proceeding only relates to the street. However, it is obvious that the city will not seek a separate easement to lay these mains if the taking for the extension of South Eighteenth street is upheld. We deem that the laying of water and sewer mains is so intertwined with the taking for street purposes that this objection by the city is without merit.

The second objection of the city is that the summary judgment is self-executing, and, therefore, under this court's holding in *Brown Deer v. Milwaukee* [9] the circuit court was without power to enter the instant stay order. The two situations are not at all parallel. In the *Brown Deer Case* the action was one for declaratory judgment to determine the validity of certain competing annexation ordinances of the village of Brown Deer and the city of Milwaukee, and the judgment adjudicated which of such ordinances were valid and invalid. In the instant case the relief sought by plaintiffs was a permanent injunction "prohibiting the defendant from further proceeding with the taking of the plaintiffs' property pursuant to the plan and report herein described and adopted by the common council." The summary judgment appealed from

[9] (1959), 8 Wis. (2d) 631, 99 N. W. (2d) 860.

dismissed the complaint. The stay order merely sought to preserve the *status quo* until this court decided whether plaintiffs were entitled to a permanent injunction.

The case at bar is further distinguishable from *Brown Deer*, inasmuch as it presents a situation where the stay is important to plaintiffs, yet does not harm defendant city other than making it refrain from proceeding with installing paving and laying water and sewer mains on the land sought to be taken. It does not force the city to continue doing any acts. In *Brown Deer* the court was obviously bothered by the fact that the city would be required to affirmatively continue services in an area judicially determined to belong to the village. In the instant case no such affirmative act is required of the city.

In *Town of Fond du Lac v. City of Fond du Lac*,[10] following the *Brown Deer Case*, another method was pointed out whereby, even in a declaratory judgment action involving the validity of an annexation ordinance, the effect of the trial court's stay order in *Brown Deer* could be obtained. This is for the trial court to utilize the supplemental relief procedure provided by sub. (8) of sec. 269.56, Stats., in the Declaratory Judgments Act and make the declaration of rights effective when the supreme court shall have determined the losing party's appeal. As stated in the *Fond du Lac Case* this would "avoid inequitable interim problems."[11]

Although the instant case is similar to *Brown Deer* in that it presents a self-executing judgment, it is an equitable action and the trial court in the exercise of its inherent equitable power should be allowed to preserve the *status quo* to insure that equity will not be denied plaintiffs if they should be successful on appeal. This is

[10] (1964), 22 Wis. (2d) 525, 126 N. W. (2d) 206.
[11] Id. page 532.

in keeping with the following statement made in *Town of Fond du Lac v. City of Fond du Lac:* [12]

"A court of equity has inherent power to fashion a remedy to the particular facts. Continued failure to do so would render equity as sterile and as arbitrary in its relief as the old common-law courts, the inadequacy of which historically gave rise to the courts of chancery."

Plaintiffs' point is well taken that if the *status quo* is not maintained, the city can proceed with the street improvements and water and sewer mains thereby materially changing plaintiffs' land in a manner difficult to undo if the judgment were to be reversed on appeal. With the strong equity in plaintiffs' favor and little harm to defendant if the *status quo* is maintained, the stay of the trial court was clearly warranted.

Moreover, it is a general rule that either the trial court or the appellate court has inherent power, independent of statute, to grant a stay.[13] Such a stay should be granted when necessary to preserve the *status quo,* where the appeal presents debatable questions of law, where substantial rights are to be affected, and where it can be granted without depriving the defendant of a substantial right.[14] In the instant case each of the above criteria is present.

Some courts have concluded that a stay may be granted to preserve the *status quo* even where the judgment is said to be self-executing, as in the case at hand.[15] The recent California case of *Deepwell Homeowners' Protective Asso. v. City Council* [16] presents a situation closely analogous to the one at hand where the court considered a stay to preserve the *status quo.* In that case the trial

---

[12] *Supra,* footnote 10, page 531.

[13] 4A C. J. S., Appeal and Error, p. 444, sec. 634.

[14] Id. page 453, sec. 636.

[15] 4 Am. Jur. (2d) p. 842, sec. 368.

[16] (1965), 239 Cal. App. (2d) 56, 48 Cal. Rptr. 321.

court sustained a demurrer to a petition seeking to annul resolutions granting a conditional use permit to the permittee to erect apartment buildings and to enjoin the permittee from acting under the permit. Plaintiff requested the appellate court for a stay, but respondents contended that no stay could issue because the trial court's judgment on demurrer required no issue of process for its enforcement, and, therefore, there was nothing to stay. The court determined that it had jurisdiction to issue such a stay, saying:

"Although there is authority to the effect that supersedeas will not lie where no process is required for the enforcement of the judgment appealed from . . . the inherent power of the appellate court will apply where the effect of the judgment, as here, is such that a stay . . . would result in depriving an appellant of the fruits of his appeal should he be successful in securing a reversal of the judgment." [17]

Similar language from the Oregon case of *In re Workman's Estate* is also most apropos:

"The appeal from the part of the order which refused to appoint the appellant stayed nothing because that part of the order was self-executing and required no affirmative action. However, this court possesses inherent power, as do all appellate courts, to issue orders of supersedeas for the preservation of the subject matter of the appeal, thereby avoiding the imposition of irreparable damage upon the parties; and it may exercise this power even though the appeal is taken from a self-executing judgment or decree. . . . [T]his same power is possessed also by the court from which the appeal was taken . . . ." [18]

[17] Id. at 48 Cal. Rptr., p. 323. After concluding that it had the power to issue the stay, the court, upon a review of the situation, declined to issue a stay. For a case similar in result concerning the "power" issue on an appeal from demurrer, see *Kennett v. Levine* (1956), 49 Wash. (2d) 605, 304 Pac. (2d) 682.

[18] (1937), 156 Or. 333, 349, 65 Pac. (2d) 1395, 68 Pac. (2d) 479.

We not only determine that the trial court had power to issue the stay order but there was no abuse of discretion in so exercising that power in the manner that it did.

*By the Court.*—The judgment and the portions of the two orders appealed from are affirmed.